Filed 3/17/26  In re K.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re K.H. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E086668 |
| Plaintiff and Respondent, | (Super. Ct. No. DPIN2300014) |
| v. | OPINION |
| M.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elizabeth E. Tucker, Judge.  Reversed with directions.

Leila H. Moncharsh, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Jamila T. Purnell and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant and appellant, M.H. (Mother) appeals from findings and orders made on June 11, 2025, terminating her parental rights to her infant twins under Welfare and Institutions Code, section 366.26.[1]  Mother's only contention on appeal is that the Riverside County of Public Services (DPSS) failed to meet its duty of inquiry under the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) and related state law.  We agree, and conditionally reverse the order terminating parental rights and remand with directions DPSS fully comply with its duties of inquiry under ICWA and related California law.

# II.

## FACTS AND PROCEDURAL BACKGROUND

The twins were born in January 2023.  Although Mother and the twins tested negative for controlled substances at the time of delivery, the twins' meconium sample came back positive for methamphetamines.  Nevertheless, the twins were discharged from the hospital into Mother's care.  Father was currently in prison.

---

[1]  Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.  Because ICWA uses the term "Indian," we do so on occasion as well, not out of disrespect, but because of the need for clarity and consistency, even though we recognize that other terms, such as "Native American" or "indigenous" are preferrable.

On January 17, 2023, DPSS received a referral alleging general neglect of the twins. DPSS obtained protective custody warrants to remove the twins from Mother and Father. DPSS filed a juvenile dependency petition on January 24, 2023, under section 300, subdivisions (a), (b), and (g). The petition alleged Mother abused substances during pregnancy, resulting in the twins' positive meconium drug results. Both parents allegedly had a history of substance abuse. Father had a criminal history and was incarcerated, which prevented him from caring for and supporting the twins.

At the contested dependency hearing on January 30, 2023, the court permitted the twins to continue to live with Mother in the home of T.M., the twins' maternal great aunt (MGA), who was a drug and alcohol counselor. At the jurisdiction/disposition hearing in April 2023, the court declared Father, who was telephonically present, to be the twins' biological father. DPSS made multiple unsuccessful attempts to interview Father in June 2023. During the jurisdiction/disposition hearing in June 2023, the court declared the twins dependents of the court, ordered the twins to remain in Mother's care on family maintenance, and ordered the twins removed from Father, who was in prison.

On December 3, 2023, DPSS received a general neglect referral regarding the twins. Mother allegedly "pretend[ed]" to live with MGA but was actually living with her boyfriend, who was selling drugs out of the home. Mother was working as a prostitute and came home under the influence. There were illegal guns in the home in plain view. Mother reportedly let the twins "cry for a long time" and was intoxicated while caring for

them.  When DPSS attempted to contact Mother, she was evasive.  MGA reported that Mother was in Nevada and Father had been released from prison.

In January 2024, DPSS filed a section 387, supplemental juvenile dependency petition on behalf of the twins, alleging Mother continued to abuse controlled substances and tested positive for amphetamine and methamphetamine, rendering her incapable of properly caring for and supervising the twins.  DPSS obtained protective custody warrants to remove the twins from Mother.  The twins were placed in a foster home in January 2024.  During the hearing on the section 387 supplemental petition, the court ordered the twins detained from Mother and Father.  DPSS stated in its declaration of due diligence, filed in February 2024, that Father had been located and had received notice of the next hearing verbally and by text.  A forensic medical exam of the twins and hair follicle showed that one of the twins tested positive for fentanyl and the other tested positive for methamphetamine and amphetamine.

During the section 387 jurisdiction/disposition hearing on March 25, 2024, the court sustained the supplemental petition allegations, removed the children from Mother's care and ordered reunification services for Mother.  Father was arrested in August 2024.  He failed to appear for another felony settlement conference, resulting in the court issuing a bench warrant.  In September 2024, DPSS encountered Father at Mother's last known residence.  Father claimed he was the twins' uncle, not their father.  When the social worker told him she knew he was the twins' Father, he reportedly "remained mute."  Meanwhile, after the 387 jurisdiction/disposition hearing, Mother's

4

whereabouts were unknown.  DPSS learned that she might be residing with a maternal aunt.  Mother did not respond to DPSS's efforts to contact her, although she visited the twins consistently and appeared at the six-month hearing in October 2024.  During the hearing, the court terminated Mother's reunification services and reduced visitation.

In January 2025, the twins were placed in an adoptive home.  Also in January, Father was arrested again and incarcerated.  Mother continued visiting the twins.  Father appeared at the February 24, 2025, section 366.26 hearing  In April 2025, Father was released from jail and transported to state prison.  Also in April 2025, Mother filed a section 388 petition requesting the court to reinstate her reunification services and return the twins to her care.  She asserted that she had completed her case plan services and the twins were bonded to her.  After filing her section 388 petition, Mother admitted she still abused controlled substances, including methamphetamine, and denied receiving substance abuse treatment.  In June 2025, Mother's hair follicle test showed she was negative for all substances.

On June 11, 2025, the court denied Mother's section 388 petition on the grounds there were not changed circumstances and granting the petition was not in the twins' best interests.  The court also terminated Mother and Father's parental rights.  Mother filed a notice of appeal.

## III.

## ICWA NONCOMPLIANCE

Mother contends DPSS failed to satisfy its ICWA duty of inquiry. We agree.

A. *Standard of Review*

We apply the substantial evidence standard of review when determining whether there was ICWA compliance, unless the facts are undisputed or ICWA compliance turns on a legal issue, in which case we apply the de novo standard of review. (*In re S.R.* (2021) 64 Cal.App.5th 303, 311-312.) Here, the facts regarding ICWA compliance are undisputed. We therefore review the issue of ICWA compliance de novo.

B. *Procedural Background*

Although DPSS stated in the juvenile dependency petition filed on January 24, 2023, that DPSS had completed inquiry, form ICWA-010(A), attached to the petition, states that inquiry of Mother was not made because she had not made herself available to DPSS. Inquiry had also not been completed as to Father because he was currently incarcerated.

On January 25, 2023, Mother filed an ICWA-020 form, entitled Parental Notification of Indian Status. Mother left blank the section on "Indian Status." Mother's attorney acknowledged at the contested detention hearing the inadvertent omission and stated that Mother intended to check the box on the form that indicated that there was no Native American ancestry. Father's attorney stated he had not had any contact with Father.

6

During the contested detention hearing on January 30, 2023, the court asked Mother if she had any Native American ancestry. She responded, "I'm not too sure." She also said she had never lived on tribal land or received any medical benefits or assistance from the Bureau of Indian Affairs, and she was not aware of any of her ancestors ever claiming any Indian ancestry.

The court also asked the twins' maternal great aunt, MGA, who was present at the hearing, if she had any Native American ancestry, and she responded, "Don't know." She further stated she had never lived on a reservation or received any benefits from the Bureau of Indian Affairs. In response to being asked if any of her ancestors had ever claimed Native American ancestry, MGA replied, "My dad used to say that his mom had Cherokee [I]ndian in him, but I don't know. I grew up in New York. We grew up in New York City." MGA said her dad (MGF) was no longer living.

The court stated that it had completed ICWA inquiry and concluded that there was no reason to know the twins were Native American children. The court further stated that Mother had declared she did not have any reason to believe that the twins were Indian children. The court ordered DPSS to complete a further ICWA inquiry regarding Father and any additional relatives named by Mother.

DPSS reported in its jurisdiction/disposition report filed on March 10, 2023, that ICWA "does or may apply." DPSS reported that on March 6, 2023, Mother denied Native American ancestry and tribal affiliation. As to Father, DPSS reported that he was

7

currently incarcerated and therefore DPSS had not completed an inquiry as to his Native American ancestry.

Father appeared telephonically at the jurisdiction/disposition hearing on March 15, 2023. During the hearing, his attorney told Father to try to contact him, and he would also try to reach Father. The social worker also needed to talk to Father. Father asked what it was all about. His attorney explained that it was a juvenile dependency proceeding involving the twins, and that a DNA test was required to confirm he was their father.

Father appeared telephonically at the April 25, 2023 hearing. DPSS requested the court continue the hearing because DPSS was unable to contact Father to interview him. Father requested to attend the next hearing on June 9, 2023. The court granted his request.

At the June 9, 2023 hearing, Father's attorney noted that DPSS had not interviewed Father yet. DPSS stated that it had been attempting to contact Father, but had not succeeded because it was difficult to do so while he was in prison. DPSS had emailed and called in an attempt to contact Father. Father's attorney stated that he had been able to talk to Father while he was incarcerated, and told Father to call DPSS for his interview. Father tried to but was unsuccessful. The court suggested Father's attorney talk to him following the hearing, but his attorney said the prison would not allow him to. Calls had to be set up ahead of time. On June 9, 2023, the court found that DPSS conducted a sufficient inquiry as to whether the twins might have Indian ancestry.

DPSS reported in its family maintenance status review report filed on November 27, 2023, that ICWA did not apply. DPSS reported that on November 15, 2023, Mother denied any knowledge of Native American ancestry. On December 7, 2023, DPSS conducted a California Corrections Department search for Father and did not locate him in prison. On December 11, 2023, Mother again denied Native American ancestry. DPSS reported that it had not been able to make another inquiry to determine if ICWA applied because Mother only communicated with the social worker by text messages and had not made herself available for an interview because she works. MGA told DPSS that Father had been released from prison. MGA said she did not know where the paternal relatives lived or if they had any Native American Ancestry.

On January 22, 2024, Mother filed an updated form ICWA-020 in which she denied Native American ancestry and tribal membership. Also on January 22, 2024, during the section 387 supplemental detention petition hearing, the court found that ICWA did not apply, and there was no reason to know that the twins were Indian children, DPSS conducted an adequate inquiry, and ICWA did not apply. Father was not present. On February 22, 2024, DPSS filed a declaration of due diligence stating that on February 20, 2024, DPSS submitted a request for Person Locator assistance for Father. The report stated that Father was located on February 21, 2024. DPSS contacted him on February 21, 2024, and he provided his phone number and current address in the due diligence declaration.

On March 19, 2024, Mother denied Native American ancestry.  The hearing was continued to allow paternal DNA testing, and resumed on April 25, 2023, after which DNA testing established that Father was the twins' biological father.  At the jurisdiction/disposition hearing on March 24, 2024, the court found ICWA did not apply, there was proper further inquiry, and due diligence was conducted.  Therefore, there was no reason to know the twins were Native American.

During the jurisdiction hearing on March 25, 2024, Mother told the court her mother (MGM) had died.  Father's attorney told the court she had not had any contact with him.  On September 3, 2024, DPSS made face-to-face contact with Father at Mother's last known address.  He refused to identify himself.  The social worker told him she recognized him as the twins' father and explained that she was contacting him about visitation, but Father "remained mute."

During the contested 6-month review hearing on the supplemental dependency petition on October 28, 2024, the court concluded that ICWA did not apply.  The court found that further inquiry and due diligence was conducted, and there was no reason to know the twins were Indian children.  Sufficient inquiry was made and there was no new information indicating that ICWA applied.  Father was not present at the hearing.  Mother was present.  At the contested status review hearing on October 30, 2024, the court found that ICWA did not apply.

On February 24, 2025, Father appeared in-custody at the section 366.26 hearing on the original dependency petition. The court continued the hearing. On April 7, 2025, DPSS reported that Mother denied Native American ancestry, that additional ICWA inquiry attempts regarding Father had been unsuccessful, and there was no new information suggesting ICWA applied. On April 28, 2025, the court again found that ICWA did not apply. Mother was present at the hearing but Father was not. The court continued the section 366.26 hearing to June 11, 2025, and ordered Mother and Father to appear at the hearing.

On June 11, 2025, Mother appeared at the section 366.26 hearing and hearing on her section 388 petition, which the court denied. Father did not appear. The court found that there was sufficient ICWA inquiry and ICWA did not apply, and terminated parental rights.

C. *Applicable ICWA Law*

After the federal ICWA regulations were adopted in 2016, California amended its statutes to conform with ICWA's inquiry and notice requirements. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131 (*Dezi C.*).) This resulted in agencies having a broader duty of inquiry. (*Ibid*.) Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child. "Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) This 'duty to inquire begins with the initial contact, including, but not limited to,

11

asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' (*Ibid*.; see also rule 5.481(a); [*In re*] *Isaiah W.* [2016] 1 Cal.5th [1,] 14 ['juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status'].)" (*Dezi C.*, *supra*, at pp. 1131-1132.)

"[S]ection 224.2 is broadly construed "to require the county welfare department to conduct an extended-family inquiry in all cases in which a child is placed into its temporary custody, regardless of how the child is removed from the home." (*In re Ja.O.* (2025) 18 Cal.5th 271, 290-291 (*Ja.O.*).) Although this duty of inquiry is sometimes referred to as the initial duty of inquiry, the duty continues throughout the dependency proceedings. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.)

Under section 224.2, subdivision (b), "once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132; see also Cal. Rules of Court, rule 5.481(a)(1).) "Extended family member" means "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); *Dezi C.*, *supra*, at p. 1132; see also

12

§ 224.1, subd. (c) [adopting ICWA definition of "extended family member"]; see also *In re Claudia R.* (2025) 115 Cal.App.5th 76, 85-86.)

Juvenile courts must conduct their own initial inquiry as well. "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678-679, quoting 25 C.F.R. § 23.107(a) (2022).) Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or "other interested person[]," if the party or other interested person was not present at the first hearing). (§ 224.2, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. [Citation.] '[R]eason to believe' exists whenever the court or DPSS has 'information suggesting that either the parent of the child or the child is a member [or citizen] or may be eligible for membership [or citizenship] in an Indian tribe.'" (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting § 224.2, subd. (e), 1st par. & (e)(1).)

The juvenile court may find that ICWA does not apply if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) The "court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id*. at p. 1141)

13

"""On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.'" [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

D. *Discussion*

We conclude DPSS did not sufficiently comply with its ICWA duty of inquiry. Neither the court nor DPSS asked Father about his or Mother's Native American ancestry, or for relatives' contact information. They also did not request him to fill out the ICWA inquiry forms, and did not adequately follow up on MGA's statement that her father might have Cherokee ancestry. Although the court asked Mother and MGA about their Native American ancestry at the contested detention hearing on January 30, 2023, DPSS did not ask any other maternal relatives and did not interview MGA. Mother had six siblings and DPSS reported that a Family Connections referral revealed that maternal relatives were located in New York, with the search ongoing.

14

There is also no mention that DPSS asked Mother about Native American ancestry or requested extended relative contact information during her interview on March 6, 2023. In addition, there is no indication that on March 11, 2024, DPSS asked Mother for extended relative contact information when it asked Mother to provide names for possible relative placement.

We recognize that Mother and Father were often difficult to contact during the juvenile dependency proceedings, and this interfered with ICWA inquiry compliance. At times, it was unknown where they were residing and they did not consistently cooperate in providing the court and DPSS with their current locations. Father was in and out of prison. When in prison, communication was difficult and, often times, DPSS's efforts to communicate with him were unsuccessful. Mother's residence changed without notice, and she was not always responsive or forthright when DPSS asked her where she was living. Nevertheless, the record does not demonstrate adequate ICWA compliance efforts.

Even though Father appeared in court several times, in person and telephonically, he was never asked about his Native American ancestry or to provide contact information for relatives who might have Native American ancestry information. The court did not ask him during his initial in-person appearance on February 24, 2025, about his Native American ancestry, as required under section 224.2, subdivision (c). The court also did not do so during his other telephonic court appearances on March 15, April 25, or June 9, 2023. Nor did the court order Father to complete form ICWA-20 (Cal. Rules of Court,

rule 5.481(a)(2(C)).  The record does not include any evidence that Father was provided with, or filled out, any ICWA inquiry forms (ICWA-010 and 020).  Because DPSS and the court did not ask anyone, other than Mother and MGA, about the twins' Native American ancestry, we conclude that DPSS has not met its burden of establishing compliance with ICWA's inquiry requirements.

DPSS and Mother agree that the proper disposition on appeal is to conditionally reverse the order terminating parental rights, with directions to the juvenile court and DPSS to comply with their ICWA duties of inquiry.  We agree a conditional reversal here is appropriate under *Dezi C.*, (2024) 16 Cal.5th at page 1152.  (see also *Ja.O.*, *supra*, 18 Cal.5th at pp. 290-291.)

In *Dezi C., supra*, 16 Cal.5th 1112, the mother appealed an order terminating parental rights based on ICWA noncompliance of the initial inquiry requirement.  The sole question before the California Supreme Court was "whether a child welfare agency's failure to make a proper inquiry under California's heightened ICWA requirements [(section 224.2)] constitutes reversible error."  (*Id*. at p. 1128.)  The *Dezi C.* court held that, "[w]hen there is an inadequate inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry.  We therefore hold that an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation."  (*Dezi C., supra*, 16 Cal.5th at p. 1125.)

16

Consistent with *Dezi C.*, we conclude the appropriate disposition here is conditional reversal, with directions that the juvenile court and DPSS fully comply with their ICWA duties of inquiry.

## IV.

## DISPOSITION

The order terminating parental rights is conditionally reversed, and the matter is remanded to the juvenile court for compliance with inquiry and notice requirements (§§ 224.2 & 224.3). If the juvenile court thereafter finds there has been proper and adequate ICWA inquiry compliance and ICWA does not apply (§ 224.2, subd. (i)(2)), the juvenile court shall reinstate the order terminating parental rights. If the juvenile court concludes ICWA applies, it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C. § 1912(a); §§ 224.2, subd. (i)(1), 224.3, 224.4; *Dezi C., supra*, 16 Cal.5th at p. 1141; *Ja.O., supra*, 18 Cal.5th 271.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.